ORIGINAL

Case No. 06400?8

## IN THE UNITED STATES COURT OF FEDERAL CLAIMS
### BID PROTEST

```
FILED

MAY 3 1 2006

U.S. COURT OF
FEDERAL CLAIMS
```

L-3 COMMUNICATIONS CORP.  )
)
Plaintiff,  )
)
v.  )  No. _____ 06-431 C
)  Judge: _____
U.S. DEPARTMENT OF  )
THE INTERIOR  )
)
Defendant.  )
)

### VERIFIED COMPLAINT FOR DECLARATORY JUDGMENT, TEMPORARY RESTRAINING ORDER, PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF

COMES NOW Plaintiff, L-3 Communications Corporation, Link Simulation & Training

Division ("L-3"), through its undersigned counsel, and files this Complaint for Declaratory

Judgment, Temporary Restraining Order, Preliminary and Permanent Injunctive Relief against

the United States Department of the Interior, GovWorks, ("GovWorks" or Agency), and

respectfully stating to this Honorable Court as follows:

### Nature of the Action

1.      This is an action for declaratory and injunctive relief pursuant to the Tucker Act,

28 U.S.C. § 1491(b)(1).

2.      This action seeks the review of GovWorks' conduct of a procurement for Joint

Terminal Attack Controller Training and Rehearsal System ("JTAC TRS") Engineering and

Design Support, pursuant to Request for Proposals ("RFP") Number 60246, including but not

limited to the evaluation conducted by GovWorks and the award of a contract made under the solicitation to Lockheed Martin Services Inc. ("Lockheed Martin").

3.      GovWorks' actions were arbitrary and capricious, without a rational basis, and contrary to applicable statutes and regulations.

4.      GovWorks' improper actions have directly harmed L3, an offeror under the RFP at issue.

5.      L-3 seeks preliminary and permanent injunctive relief to restrain (or preclude) GovWorks from permitting Lockheed Martin to commence performance and a declaration that GovWorks' award to Lockheed Martin was improper, and that award should be made to L-3.

### Jurisdiction

6.      This Court has original jurisdiction over post-award bid protests pursuant to 28 U.S.C. §1491(b)(1).

### Parties and Factual Background

7.      Plaintiff, L-3 is a leading provider of Intelligence, Surveillance and Reconnaissance (ISR) systems, secure communications systems, aircraft modernization, training and government services. The company is a leading merchant supplier of a broad array of high technology products, including guidance and navigation, sensors, scanners, fuzes, data links, propulsion systems, simulators, avionics, electro optics, satellite communications, electrical power equipment, encryption, signal intelligence, antennas and microwave components.

8.      Defendant is the United States Department of the Interior, acting through GovWorks and on behalf of the United States Department of the Air Force ("Air Force").

-2-

9.      The RFP entails an award "to create the capability for the Air Force to have a second exemplar JTAC VT Dome, as well as a prototype and/or enhanced interim training capability for the JTAC TRS Deployable/Garrison System, 2nd Generation JTAC training and rehearsal simulation environment." *See* RFP § B.1.

10.     L-3 was successful in performing as the prime contractor on the task order for the development of the first JTAC VT Dome. Also, L-3 previously was contacted by the Air Force and Dynamic Animation Systems Inc. ("DAS") to be a team member to perform under a contract concerning Joint Terminal Attack Control Virtual Trainer and The Rehearsal Enabling Simulation Technology Program.

11.     L-3 as a result of this task order and in conjunction with the Air Force developed the first JTAC VT Dome.

12.     The result of L-3's efforts with respect to the first JTAC VT Dome program has been considerable and the Air Force is a highly satisfied customer.

13.     On or about December 12, 2005, GovWorks issued the RFP for the procurement of a second exemplar JTAC VT Dome, as well as a prototype and/or enhanced interim training capability for the JTAC TRS Deployable/Garrison System, 2nd Generation JTAC training and rehearsal simulation environment.

14.     The offerors were advised that "[t]he contractor shall supply all labor and materials necessary to perform work under this Contract." *See* RFP § B.1. The contract to be awarded was a hybrid Firm-Fixed-Price/Time and Materials contract. Initially, proposals were due on January 6, 2006, but GovWorks extended that due date to January 23, 2006.

-3-

15.     The RFP stated that the resultant contract would have a base period that would run from the time of award and end one year later, including four (4) one-year renewable options. RFP, p. 4.

16.     The RFP was more than 100 pages long and discussed, in significant detail, the Air Force's technical and logistical needs. In fact, Attachment 3 of the RFP, Design Specifications, was created by L-3 under Task Order 36 of the first generation Dome contract.

17.     Under the RFP (pp. 2-4), proposals were to be evaluated with respect to (1) the offeror's Technical Proposal, which included: (A) Management Approach and Technical Capabilities; (B) Personnel Qualifications; and (C) Organizational Experience; (2) Past Performance Proposal; and (3) Price Proposal.

18.     The RFP stated that offerors' proposals would be evaluated "in accordance with the evaluation criteria identified in the attachment Evaluation Criteria [,]" which was not attached to the RFP.

19.     Though the RFP did not state the order of importance of the Technical or Past Performance Proposal, it did state that the "Technical evaluation factors are more important than price." RFP, p. 4.

20.     On December 28, 2006, GovWorks issued an Amendment to the RFP. This amendment incorporated a revised pricing schedule and questions and answers into the RFP.

21.     Based on the amended RFP, offerors were to submit their pricing based on CLINS. Amendment 1 to the RFP, pp. 11-12.

22.     CLIN 0001 was the firm-fixed-price portion of the RFP, while CLINS 0002-0005 represented the time and material portion of the contract. CLIN 0006 represented the allocated travel expense for the resultant contract.

23.    Each CLIN cited a section of the Statement of Work ("SOW"), which listed

certain deliverables that the Air Force expected the contractor to provide.

24.    CLIN 0002 references paragraph 3.3 of the SOW.  Paragraph 3.3.5, a sub

paragraph to 3.3, required that the contractor,

> "[p]rovide a high fidelity, realistic visual environment with sensor,
> simulator, and semi-immersive functions with database correlation
> and real-time visualization techniques…"

This is also a deliverable under paragraph 4.3 of the RFP.

25.    Paragraph 4.3 of the SOW, CLIN 0002 demonstrates that GovWorks wanted

offerors to include the cost of materials in its proposal, when compared to Paragraph 4.2 of the

SOW, CLIN 0001.  Paragraph 4.2 states that for the Dome the awardee would be required to

> Deliver a replica JTAC TRS Dome environment hardware and
> software that provides an immersive environment for training and
> performance measurements of JTAC competencies.

In comparison Paragraph 4.3 of the SOW required the awardee to

> Deliver I-JTAC TRS Dome environment hardware and software
> that provides an immersive environment for training and
> performance measurements of JTAC competencies using either
> existing IFACT training system hardware, new hardware, or a
> combination of each.

26    CLIN 0003 references paragraphs 3.4 and 3.5 of the SOW.  Paragraph 3.4

required that the contractor,

> "…[p]rovide integrated software, hardware, and systems
> engineering expertise to provide technologies of I-JATC TRS
> software to be transitioned to the government owned IFACT
> hardware or new hardware, at the testbeds…"

This is also a deliverable under paragraph 4.4 of the RFP.

27.    CLIN 0004 references paragraph 3.6 of the SOW.  Paragraph 3.6.3, a sub

paragraph to 3.6, required that the contractor,

> "[p]rovide software, hardware, and systems engineering expertise
> to design and implement technologies for the DMO environment.
> The technologies shall include the capabilities to interact with
> other DMO participants visually and via radio communications. In
> particular, this effort shall provide new software that is specifically
> suitable for IFACT DMA integration..."

This is also a deliverable under paragraph 4.6 and its sub paragraphs of the RFP.

28.    On or about January 17, 2006, GovWorks issued Amendment 2. Amendment 2

incorporated questions and answers into the RFP, provided the applicable NAICS code, provided

Appendix C, which was inadvertently excluded from the RFP, and posted the notice for the

January 18, 2006, site visit.

29.    On January 23, 2006, L-3 timely submitted its proposal.

30.    As required by the RFP, L-3, in Volume 2, on pages 3-5, of its proposal included

material estimates as well as labor costs.

31.    On or about March 22, 2006, L-3 was notified by a letter from GovWorks that an

award would be made to Lockheed Martin. In this award letter, GovWorks included in L-3's

proposed price its material costs for CLINS 0002-0005.

## THE DEBRIEFING

32.    On March 22, 2006, L-3 requested, in writing, a debriefing by GovWorks.

33.    By letter dated April 4, 2006, GovWorks provided a written debriefing consisting

of a 3-1/2 page letter. (*See* Exhibit 1, attached hereto.)

34.    In that letter, GovWorks stated that L-3 received a Satisfactory Rating in

Management Approach and Technical Capabilities.

35.     GovWorks, improperly, listed certain "weaknesses" in L-3's proposal that apparently, kept it from receiving an Excellent rating.

36.     L-3 received an Excellent for the Personnel Qualifications, Organizational Experience, and Past Performance factors.

37.     While no weaknesses were identified for either the Personnel Qualifications or Past Performance factors, one "noncritical" weakness with regard to key personnel resumes was identified by GovWorks, but it did not result in lowering L-3's technical score.

38.     With respect to price, the letter stated that the award price was $1,152,313. No comparison was made to L-3's price in this letter.

39.     The letter stated that "the price proposals were analyzed by the Contracting Officer, Mr. Louis C. Williams, and a determination was made as to which proposal offered the best value to the Government. The Government determined that "Lockheed Martin Services, Inc. offer was fair and reasonable and represented the best overall value to the Government."

40.     On April 5, 2005, after receipt of GovWorks' debriefing letter, L-3 contacted GovWorks, via email to the Contracting Officer, and informed them that they had follow up questions, which they attached to the email.

41.     On April 6, 2006, GovWorks, represented by the Contracting Officer and Ms. Kathleen Engel, continued its debriefing with L-3 and, during a conference call, informed L-3 that Lockheed Martin did not include costs for materials in its proposal.

42.     During the April 6, 2006, conference call, L-3 raised questions with regard to the weaknesses GovWorks identified in its technical proposal. These issues were tabled as no technical representatives were present at this meeting.

43.     L-3's evaluated price was also discussed during this meeting.  L-3 was told that
its evaluated price was higher than Lockheed Martin's price.

44.     On April 10, 2006, GovWorks, represented by Ms. Engel and Lt. Kevin Hill, a
member of the technical evaluation team, and L-3 had another conference call to continue the
debriefing.

45.     In response to L-3's questions with regard to the identified weaknesses in its
technical proposal, Lt. Hill noted that none of the technical weaknesses were significant and
admitted he made a mistake considering L-3's failure to budget for the ASTI Synapse Product
for radio to simulation interface system a weakness.  The ASTI Synapse Product was to be
provided as Government Furnished Property and, thus should not have been budgeted for in
either offerors' proposal.

46.     During the conference call, L-3 asked whether Lockheed Martin had included the
cost of materials in its proposal.  Lt. Hill responded that he did not want to discuss Lockheed
Martin's proposal.

47.     Ms. Engel responded to L-3's question and first informed L-3 that Lockheed
Martin had proposed costs for materials, but that that number was "backed out" for evaluation
purposes.  When L-3 asked for additional information Ms. Engel then stated that she was not
sure whether Lockheed Martin had "bid materials" and tabled the issue.

48.     During the April 10, 2006, conference call, Ms. Engel also stated, for the first
time, that since L-3 failed to provide sufficient detail in its Technical Proposal and that there was
a need to compare the L-3 and Lockheed Martin proposals, GovWorks removed L-3's material
costs from the evaluation.

49.     After the conference call, on April 10, Ms. Engel contacted L-3 and informed L-3 that Lockheed Martin did not include the cost of materials in its proposal.

50.     GovWorks debriefing of L-3 ended on April 10, 2006.

### Agency Level Protest

51.     L-3 filed an Agency level protest on April 14, 2006.

52.     In its protest, L-3 alleged that GovWorks made three substantial, material and prejudicial errors in its technical evaluation of the offerors' proposals. These were that (1) GovWorks improperly downgraded L-3's technical proposal, (2) GovWorks failed to downgrade Lockheed Martin's technically unacceptable/ noncompliant proposal, and (3) GovWorks treated the offerors' proposals unequally.

53.     L-3 further alleged that GovWorks' cost realism analysis was unreasonable and that Lockheed Martin's pricing was unrealistic and demonstrates a lack of understanding of the requirements.

54.     As a result of these deficiencies, L-3 also alleged that GovWorks' cost technical trade-off was unreasonable.

55.     With regard to its argument that GovWorks improperly downgraded its technical proposal, L-3 pointed to statements made by Lt. Hill during the April 10, 2006, conference call, noted in paragraph 44 above, and information contained in its proposal that demonstrated that the weaknesses credited to L-3's technical proposal were improperly held against it.

56.     Concerning the second protest issue, that GovWorks failed to downgrade Lockheed Martin's technically unacceptable proposal, L-3 cited the fact that Lockheed Martin failed to bid material costs as required by section B.1 of the RFP.

57.     Furthermore, with regard to L-3's third protest issue, GovWorks treated the offerors' proposals unequally, L-3 referenced its first two protest arguments, namely that it was downgraded for weaknesses that did not exist while Lockheed Martin was not downgraded for the significant deficiencies in its proposal.

58.     With regard to L-3's argument, that GovWorks failed to conduct a reasonable cost realism analysis, L-3 argued first that GovWorks has not explained exactly what steps it took in performing its cost realism analysis and also, that GovWorks' removal of L-3's material costs did not "level the playing field" as a portion of the labor hours bid were directly associated with the materials.

59.     Furthermore, with regard to L-3's other cost related argument that, Lockheed Martin's pricing was unrealistic and demonstrates a lack of understanding of the requirements, L-3 described its experience as the developer of the first generation Dome, noted that this gave it a better understanding of the costs associated with the requirements of the RFP, and this fact should have been considered when reviewing Lockheed Martin's price proposal.

60.     L-3 also argued that based on the errors in GovWorks' technical evaluation and cost realism analysis any resulting cost technical trade-off would be fundamentally flawed.

61.     On May 22, 2006, GovWorks issued its decision denying L-3's agency protest in its entirety.

62.     In GovWorks' decision it stated, for the first time, that the weaknesses that it identified in its debriefing of L-3 as the reason L-3 did not receive an Excellent rating for its proposal were not the basis for its rating; rather, "[t]he strength of the L-3 proposal approach earned a satisfactory score."

-10-

63.    The Agency also for the first time stated that L-3 should not have listed the 14 major systems of the Dome it did list, but rather it should have listed all 200 known line items that were required for the original Dome that, L-3 designed. The list of 200 items, which were not included in the RFP, that GovWorks refers to in its decision was created by L-3 and was an attachment to its final report. This report, sans the attachment containing the 200 line items, was Attachment 3 to the RFP.

64.    GovWorks went on to say that it viewed L-3's failure to list these items individually as a demonstration that it did not adequately understand the requirements of the SOW. This determination was not and is not reasonable.

65.    L-3 was aware of all the known parts as it was the designer and manufacturer of the initial Dome and GovWorks was aware of this fact as it included a document created by L-3 in the RFP as Attachment 3.

67.    L-3 offered to use its personnel that worked on its Warfighter Task Order 36, which was awarded in January 2004. Under this task order, L-3 designed, fabricated the hardware and developed and integrated the hardware and software for the Joint Terminal Attack Controller Virtual Trainer JTAC/VT, the predecessor to "I J-TAC TRS". Its management would seamlessly transition from the Warfighter Task to this program, ensuring that all members of L-3's team had experience on the JTAC VT program since its inception.

68.    L-3 also proposed utilizing the technology previously developed for the Dome and develop new technology as necessary.

## COUNT I
### GovWorks Should Have Awarded the JTAC TRS Engineering and Design Support
### Contract to L-3 as its Proposal Clearly Represented the Best Value to the Government

69.    L-3 realleges and incorporates herein the allegations contained within paragraphs 1- 68 as set forth above.

70.    GovWorks' award of the JTAC TRS Engineering and Design Support contract based on Lockheed Martin's technically unacceptable proposal was improper, arbitrary and capricious and *per se* unreasonable, and contrary to applicable statute and regulation, because Lockheed Martin failed to include the costs of materials in its proposal as required by the RFP.

71.    L-3 has been directly harmed by GovWorks' improper actions since award of a contract for the JTAC TRS Engineering and Design Support was improperly made to Lockheed Martin, as its proposal was technically unacceptable/noncompliant.

72.    Accordingly, GovWorks' should be directed to terminate for convenience the JTAC TRS Engineering and Design Support contract awarded to Lockheed Martin and award the contract to L-3.

## COUNT II
### GovWorks' Evaluation of L-3's Proposal was Improper,
### Arbitrary and Capricious

73.    L-3 realleges and incorporates herein the allegations contained within paragraphs 1- 72 as set forth above.

74.    GovWorks' evaluation of L-3's proposal was improper because GovWorks' failed to consider the information provided in the Technical Proposal submitted by L-3 and arbitrarily and capriciously identified weaknesses against L-3 that were not supported by L-3's technical proposal.

75. GovWorks' evaluation of L-3's proposal also was improper because GovWorks failed to consider L-3's exceptional performance as the designer of the system.

76. GovWorks', in light of the conclusions made in regard to the evaluation of L-3's proposal, improperly utilized undisclosed evaluation criteria.

77. Had GovWorks conducted a proper evaluation, L-3, as the developer of the first generation Dome, would have received a higher score than Lockheed Martin in the Management Approach and Technical Capability factor.

78. L-3 has been directly harmed by GovWorks' improper actions. Had the GovWorks conducted a proper evaluation, it would have awarded the contract to L-3.

79. Accordingly, GovWorks should be ordered to terminate for convenience the JTAC TRS Engineering and Design Support contract awarded to Lockheed Martin and award the contract to L-3.

## COUNT III
## GovWorks Failed to Treat Offerors Equally

80. L-3 realleges and incorporates herein the allegations contained within paragraphs 1-79 as set forth above.

81. GovWorks never advised L-3 that it was not required to include the cost of materials in its proposal.

82. L-3's proposed price, had it known of GovWorks position to not include the cost of material in its proposal, would have been lower than Lockheed Martin's price.

83. GovWorks did not properly take into account the inter-relationship between labor and the cost of material proposed by L-3.

84. L-3 has been directly harmed by GovWorks' unequal treatment of offerors. Had GovWorks treated L-3 in an equal manner, it would have awarded the contract to L-3.

85.     Accordingly, GovWorks should be ordered to terminate by convenience the JTAC TRS Engineering and Design Support contract awarded to Lockheed Martin and award the contract to L-3.

## COUNT IV
### GovWorks Failed to Conduct a Proper Cost Realism Analysis of the Lockheed Martin Proposal

86.     L-3 realleges and incorporates herein the allegations contained within paragraphs 1- 85 as set forth above.

87.     GovWorks' cost realism analysis was improper because it failed to consider information contained in the RFP that required offerors include the cost of materials.

88.     GovWorks' cost realism analysis was improper because it failed to consider L-3's experience as the developer of the first generation Dome when it was determining the reasonableness of Lockheed Martin's price and it did not properly take into account the inter-relationship between labor and the cost of materials proposed by L-3 and the significant decrease in price that would result if the cost of materials were excluded from L-3's proposal.

89.     L-3 has been directly harmed by GovWorks' improper actions. Had GovWorks conducted a proper cost realism analysis of the Lockheed Martin proposal, it would have awarded the contract to L-3.

90.     Accordingly, GovWorks should terminate for convenience the JTAC TRS Engineering and Design Support contract awarded to Lockheed Martin and award the contract to L-3.

## COUNT V
### GovWorks' Best Value Determination is Improper and Award
### of the Contract Should be Made to L-3

91.    L-3 realleges and incorporates herein the allegations contained within paragraphs
1- 90 as set forth above.

92.    GovWorks' improper evaluation of L-3's and Lockheed Martin's proposal
resulted in a skewed and improper best value determination.

93.    Had GovWorks performed a proper cost realism analysis, it would have
determined an evaluated price for the Lockheed Martin proposal substantially higher than L-3's
proposed price.

94.    Had GovWorks conducted a proper technical evaluation, L-3, as the developer of
the first generation Dome, would have received a higher technical score than Lockheed Martin.

95.    L-3 has been directly harmed by GovWorks' improper actions since award of the
contract was improperly made to Lockheed Martin.

96.    Accordingly, GovWorks should be ordered to terminate for convenience the
JTAC TRS Engineering and Design Support contract awarded to Lockheed Martin and award the
contract to L-3.

WHEREFORE, L-3 prays this Court enter judgment in its favor and against GovWorks
as follows:

a.    Enjoining GovWorks from permitting Lockheed Martin to begin or
continue performance under the contract;

b.    Declaring that the award of the contract to Lockheed Martin was improper
and directing that award should be made to L-3;

-15-

c.    Alternatively, direct GovWorks to amend the RFP and open discussions

with all offerors in the competitive range and conduct a proper evaluation of the

proposals in accordance with the terms and conditions of the RFP and applicable

regulations and statutes;

d.    Granting L-3 its costs in this action, including reasonable attorneys' fees;

and

e.    Granting such further relief as the Court may deem just and proper.


Respectfully submitted,

Michael A. Hordell
PEPPER HAMILTON LLP
600 Fourteenth Street, N.W., Suite 500
Washington, DC 20005-2004
Telephone: (202) 220-1200
Facsimile: (202) 220-1665
L-3 Communications Corporation
Link Simulation & Training Division

Of Counsel:
Charles H. Carpenter
Sean P. Bamford


Dated: May 30, 2006

## IN THE UNITED STATES COURT OF FEDERAL CLAIMS
## BID PROTEST

| | |
|---|---|
| L-3 COMMUNICATIONS CORP.     ) | |
|                     ) | |
|       Plaintiff,       ) | |
|                     ) | |
|            v.        ) | No. _____ |
|                     ) | Judge: _____ |
|                     ) | |
| U.S. DEPARTMENT OF       ) | |
|      THE INTERIOR         ) | |
|                     ) | |
|       Defendant.      ) | |
| | |

## <u>VERIFICATION</u>

I verify under penalty of perjury that the foregoing is true and correct.  Executed on this 30th day of May, 2006.

*David F. Williams*

David F. Williams
Vice President, Training Systems
L-3 Communications Corporation
Link Simulation & Training Division



April 4, 2006

L3 Communications
Attn: Howard Taylor
P.O. Box 5328
Arlington, TX 76005-5328

Subject: Debrief of L3 Communications for GovWorks RFP # 60246, Joint Terminal Attack
Controller Training and Rehearsal System (JTAC TRS) Engineering and Design Support

Dear Mr. Taylor:

IAW FAR Part 8.405-2(d), GovWorks is providing you "a brief explanation of the basis for the
award decision".

- Number of offerors solicited: **Open Market**
- Number of proposals received: **2**
- Name and address of each offeror receiving an award:

  **Lockheed Martin Services, Inc.**
  **580 W. Cheyenne Avenue, Suite 130**
  **North Las Vegas, NV 89030-3980**

- Award amount: **$1,152,313.00**

The following is a list of strengths / weaknesses / deficiencies in L3 Communication's proposal
identified by the Technical Evaluation Team:

## A: Management Approach and Technical Capabilities
1. Understanding of the work, including creativity and thoroughness shown in understanding
   the objectives of the SOW and specific tasks, and planned execution of the project.
2. Evidence of specific methods and techniques for completing each discrete task, to include
   such items as quality assurance, and customer-service.
3. Ability to address anticipated potential problem areas, and creativity and feasibility of
   solutions to problems and future integration of new processed and technology
   enhancements.
4. Degree to which the offerors quote demonstrates an understanding of logistics, schedule,
   and any other miscellaneous issues in which the Government should be aware.
5. Quality and effectiveness of the allocation of personnel and resources.

### Strengths:

- L3's understanding and attention to detail of the objectives of the SOW and specific
  tasks, as well as their planned execution of the project meets our expectations.

- L3's proposed methods and techniques for completing each discrete task, to include
  such items as roles and responsibilities and management and status reporting meets
  our expectations.



- L3 provided detailed technical ideas on possible solutions for the Interim JTAC TRS; to include dimensions, eye relief, projector location, display surface, field of view, and affordability.

**Weaknesses:**

- Although not a critical factor, L3's proposal does not demonstrate complete coverage of logistics and schedule, specifically the Clone delivery to Nellis Air Force Base.
- L3's proposal does not adequately address Paragraph 4.2 of the SOW; specifically, the Title 50 DFARS rights.
- The estimated number of total hours to complete the Dome at Nellis AFB (CLIN 0001) seems slightly excessive for the effort of work considering the total hours required for the initial Dome.
- L3's assumptions stated that AFRL/HEA would provide an ASTI Synapse Product for radio to simulation interface system. This should be budgeted and provided as part of L3 proposal as it was in the initial JTAC TRS effort. This will not be government furnished equipment.

L3 Communication's Management Approach and Technical Capabilities rating is **"Satisfactory"**.

**B: Personnel Qualifications**
1. The currency, quality and depth of experience of individual personnel in working on similar projects. Similar projects is meant to convey similarity in topic, dollar value, workload, duration, and complexity.
2. Quality and depth of education; experience on other projects which may not be similar enough to include in response to A.1. (immediately above) but may be relevant.
3. The currency, quality, and depth of how the Project Director will supervise and coordinate the workforce.

**Strengths:**

- The currency, quality, and depth of education and experience of key personnel, as well as the currency, quality, and depth of how the program manager will supervise and coordinate the workforce exceeded our expectations.
- Many of the identified key personnel were part of the initial JTAC TRS Dome R&D team. This will have a positive impact on expediting work completion and reducing risk of Clone Dome development.

**Weaknesses:**
- No weaknesses identified.

L3 Communication's personnel qualification rating is **"Excellent"**.



**C: Organizational Experience**
1. Evidence that the organization has current capabilities; and for assuring performance of this requirement. Evidence of supporting subcontractors, consultants and business partners will be considered.
2. Appropriate mix and balance of education and training of team members.

<u>**Strengths:**</u>

- L3 has proposed capabilities for assuring performance of the JTAC TRS requirements. L3 proposed direct access to the tooling and personnel that were used in the initial JTAC TRS Dome development.

- L3 has established teaming arrangements and contract agreements with Fire Arms Training Systems (FATS) and D&S Consulting Incorporated (DSCI). These partnering agreements will provide additional knowledge and skills required to meet the JTAC TRS requirements.

<u>**Weaknesses:**</u>
- Although not a critical factor, only two resumes were provided for key personnel. The appropriate mix and balance of education and training of team members is not clearly presented.

L3 Communication's organizational experience rating is <u>**"Excellent"**</u>.

**D. *Past Performance***
1. The organizations history of successful completion of projects; history of producing high-quality reports and other deliverables; history of staying on schedule and within budget.
2. The quality of cooperation (with each other) of key individuals within your organization, and quality of cooperation and performance between your organization and its clients.
3. The organization's specific past performance on prior similar efforts specified within this SOW.

<u>**Strengths:**</u>

- L3's past performance on prior similar efforts specified within L3's proposal, specifically their work on/with the F-16 Aircrew Training Device, 20/20 Advanced Technology Demonstrator, and Mesa Research Site Warfighter Contract. L3's history of successful completion of projects; history of producing high-quality reports and other deliverables; history of staying on schedule and within budget has exceeded our expectations.

- L3 is the prime contractor for the current and previous Mesa Research Site Warfighter Contract. L3's experience provides an exceptional foundation for addressing the JTAC TRS requirements.

- The quality of cooperation of L3 individuals during the initial JTAC TRS R&D effort within AFRL/HEA, and quality of cooperation and performance with AFRL/HEA and other contractors (Minerva, L3, and DAS) is evident in their proposed past performance and has exceeded our expectations.


FEDERAL ACQUISITION CENTER
Government Working With Government

**Weaknesses:**
- No weaknesses identified.

L3 Communication's past performance rating is **"Excellent"**.

**Price Proposal**
The elements of the price proposal were analyzed by the Contracting Officer and a determination was made as to which proposal offered the best value to the government. The Government determined that Lockheed Martin Services, Inc.'s offer was fair and reasonable and represented the best overall value to the Government. Please do not hesitate to contact me if you have further questions, louis.williams@mms.gov.

Sincerely,

Louis C. Williams, Jr.
Contracting Officer