**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
**BID PROTEST**

| | | |
|---|---|---|
| L-3 COMMUNICATIONS CORP., Plaintiff, | ) | |
| v. | ) | No. 1:06-cv-431<br>Judge: Francis M. Allegra |
| THE UNITED STATES, Defendant. | ) | |

**BRIEF IN SUPPORT OF PLAINTIFF'S MOTION**
**TO DISQUALIFY INTERVENOR'S COUNSEL**

FACTUAL BACKGROUND

Plaintiff understands the following facts to be undisputed. Intervenor Lockheed Martin Services, Inc. is represented in this action by the law firm of Hogan & Hartson L.L.P. ("H&H"). H&H also has an ongoing attorney-client relationship with "Titan,"[1] which relationship commenced sometime prior to the beginning of 2005. Titan has been, since a merger completed on July 29, 2005, a division of Plaintiff L-3 Communications Corporation. Titan is completely owned and controlled by Plaintiff. In addition, Plaintiff has a single legal department for its corporate family, and considers itself and its divisions a single united entity for purposes of legal conflicts of interest. H&H is aware of this, as, for example, it copied its February 2006 audit response letter, detailing its current representation of Titan, to Plaintiff's general counsel. H&H did not indicate on the letter that it was sending it to anyone at Titan.

[1] Titan was formerly known as The Titan Corporation, and was publicly traded. It is now L-3 Titan Group. *See* www.titan.com.

Plaintiff first learned that H&H intended to represent Intervenor on June 1, 2006, shortly before the motion to intervene was filed. Plaintiff's counsel notified H&H on the same day that (a) there is a conflict under the ethics rules and (b) Plaintiff does not consent to H&H's representation of Intervenor in this matter. H&H insists, however, that it may continue to represent Intervenor before this Court.

LEGAL DISCUSSION

1. <u>H&H May Not Represent Intervenor in this Action</u>

The Court has adopted the American Bar Association's Model Rules of Professional Responsibility as its code of conduct for lawyers. RCFC 83.2(c)(2). Model Rule 1.7 provides, in relevant part, that "[e]xcept as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if: (1) the representation of one client will be directly adverse to another client . . . ." Official Comment 6 to this rule is also explicit:

> Loyalty to a current client prohibits undertaking representation directly adverse to that client without that client's informed consent. Thus, absent consent, a lawyer may not act as an advocate in one matter against a person the lawyer represents in some other matter, even when the matters are wholly unrelated.

The language of these provisions, and their District of Columbia analogues (D.C. Rules 1.7(b)(1) and comments 7 and 10 thereto),[2] is unambiguously mandatory. As a matter of the Rules, a lawyer **shall not** undertake a representation prohibited by the conflict rules, without the informed consent of the affected parties.

In addition, Model Rule 1.10(a) provides that "[w]hile lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone

[2] Maryland Rule 1.7 is substantially identical to the Model Rule.

would be prohibited from doing so by Rules 1.7 or 1.9, . . ." As the comments make explicit, this means that all lawyers in a firm are to be treated as a single lawyer. Thus, it does not matter whether or not H&H member Mr. Mason represents Titan – it is enough that other attorneys at H&H do so. This provision is waivable by Plaintiff, *see* Model Rule 1.10 (d), but Plaintiff has chosen not to waive its application here. (The D.C. and Maryland rules on imputed disqualification are not materially different from the Model Rule.)

H&H admits that Titan, a part of Plaintiff,[3] is a current client, but suggests that it may nonetheless represent Intervenor in this action pursuant to D.C. Rule 1.7(d). This rule is not helpful to H&H. That rule, which has no analogue in either the Model Rules or the Maryland Rules, provides

> [i]f a conflict not reasonably foreseeable at the outset of representation arises under paragraph (b)(1) after the representation commences, and is not waived under paragraph (c), a lawyer need not withdraw from any representation . . .

This provision is only applicable here if the conflict was not reasonably foreseeable at the outset of H&H's representation of Intervenor in this action. There is simply no basis for finding that it was not foreseeable: the conflict is direct, and although H&H's representation of Titan pre-exists this suit, its representation of Intervenor adverse to Plaintiff does not. This conflict has not been thrust upon H&H by conduct of the Plaintiff, but precisely the opposite: H&H has created the conflict by its own act of appearing in this new matter adverse to Plaintiff.[4]

---

[3] Under comment 15 to D.C. Rule 1.7, Titan and Plaintiff are not distinguishable for conflicts purposes. Although the comments to the Model Rules are not as thorough on this point, the text of the rules is sufficiently similar that the same result would apply.

[4] The only potential application of D.C. Rule 1.7(d) arises from facts not present here: if Plaintiff waived the conflict and permitted H&H to represent Intervenor here, H&H would not be obligated under the D.C. Rules to withdraw from its representation of Titan. Plaintiff has not

(continued...)

As noted, the provisions of Rule 1.7 are, unlike some other provisions of the Model Rules, mandatory. There is no "substantial hardship" exception, as there is in Rule 3.7(a), for example. In addition, although this case has an accelerated schedule, a change in counsel at this stage should not materially prejudice Intervenor. The agency record has not yet been produced. Finally, Plaintiff has acted with reasonable diligence in raising this issue. Its counsel alerted H&H to the existence of the conflict on the same day H&H appeared in the case, brought the issue to the Court's attention on the following day, and is filing this motion the day after.[5] The Court has undertaken to resolve the matter on an extremely expedited basis – taking only a single business day after the issue was brought to its attention, and only then because H&H asked for that time to prepare its brief (although it had already "thoroughly vetted" the matter). If the factual circumstances here do not justify disqualification, it would be difficult to conceive of any conflict that would. Thus, unless the Court lacks the power to enforce its own ethics rules, it should disqualify H&H from representation of Intervenor in this matter.[6]

---

(continued...)

consented to H&H's representation, nor does it contend that H&H's continued representation of Titan is unethical.

[5] Plaintiff does not know whether, or, if so, when H&H informed Intervenor of this conflict. Intervenor's consent would be required for a waiver under Model Rule 1.7(c)(1), but H&H has not yet represented either to Plaintiff or to the Court that such consent has been obtained. In any event, whatever small prejudice to Intervenor can be claimed to have accrued between the time Plaintiff first raised the issue and the Court's ruling on this motion is the responsibility of H&H and/or Intervenor, not of Plaintiff or the Court.

[6] Plaintiff's counsel understands from H&H that Titan may have given some kind of advance consent to conflicts in its original engagement letter with H&H. Plaintiff's counsel has not seen this letter – the speed with which this matter is moving has not allowed this – but concludes that the advance waiver is ineffective for several reasons. First, whatever Titan said before it was owned by Plaintiff does not bind Plaintiff as to new conflicts against it. Second, advance waivers are only effective in appropriate circumstances, Comment 22 to both Model Rule 1.7 and the Maryland Rule, which certainly cannot be said to apply *against Plaintiff* at this

(continued...)

2. The Court has the Authority to Enforce its Ethics Rules

At the June 2, 2006 status conference, H&H advanced the extraordinary position that the Court lacks authority to enforce its own rules. It cites no authority for this proposition, and Plaintiff's counsel could find none. Rather, the exact opposite is clearly the case. Even before this Court's formal adoption of the Model Rules, the Court of Claims, in *Kenosha Auto Transp. Corp. v. United States*, stated:

> We believe that the court, in an appropriate case, has a responsibility to examine an allegation of violation of professional ethics and to uphold the integrity of the legal process. *Cf. Emle Industries, Inc. v. Patentex, Inc.*, 478 F.2d 562, 564-65 (2d Cir. 1973); *Richardson v. Hamilton Intern'l Corp.*, 469 F. 2d 1382, 1385 (3d Cir. 1972), *cert. denied*, 411 U.S. 986 (1973). The Canons of Professional Responsibility are applicable to proceedings in this court, and we have inherent power to assist in their enforcement.

206 Ct. Cl. 888, 891 (1975). The Court's rules, of course, make its authority to enforce its ethics rules explicit. RCFC 83.2(c)(1) provides the Court with a full range of options, and thus the Court is not merely, as H&H seems to have suggested, obligated to refer ethical lapses to the District of Columbia bar. That the Court may – and should – apply this authority to resolve a motion to disqualify counsel is well accepted.[7] *See Bayside Fed. Sav. & Loan Ass'n v. United*

(continued...)

point. Finally, H&H did not raise this issue at the June 2, 2006 status conference, from which Plaintiff infers that H&H has reconsidered the applicability of the Titan letter.

[7] In *Tannahill* and *Bayside*, the Court suggested that in addition to the Model Rules adopted in RCFC 83.2(c)(2), the Court should also examine the ethics rules of the jurisdiction where the lawyer is admitted to practice. According to his firm's website, Mr. Mason is admitted in D.C. and Maryland. In neither *Tannahill* nor *Bayside* was there a significant conflict between the Model Rules and the state rules, nor is there any here. Were there a conflict, though, it is evident that the stricter rule should apply. *See Atasi Corp. v. Seagate Technology*, 847 F.2d 826, 830 (Fed. Cir. 1988).

*States*, 57 Fed. Cl. 18 (2003) (Smith, J.); *Tannahill v. United States*, 25 Cl. Ct. 149 (1992) (Horn, J.); *Syscon v. United States*, 10 Cl. Ct. 200 (1986) (Weise, J.); *see also St. Matthew Publishing, Inc. v. United States*, 82 A.F.T.R.2d (RIA) 7391 (Fed. Cl. 1998) (Weinstein, J.) (deferring ruling on disqualification pending development of facts concerning exceptions to Model Rule 3.7(a)).

Although it is the case that the primary regulation of lawyers takes place at the state level, federal courts customarily do as the Court has done – adopt and enforce as their own state or model standards of conduct. *See* D.D.C. LCvR 83.15(a); D. Md. Rule 704. Federal district courts routinely apply these standards to motions to disqualify, and, in cases that have come before it, the Federal Circuit has accepted the district courts' power to do so, reviewing disqualifications (or refusals to disqualify) on the merits. *See, e.g., Picker Int'l, Inc. v. Varian Assocs., Inc.*, 869 F.2d 578 (Fed. Cir. 1989); *Atasi Corp. v. Seagate Technology*, 847 F.2d 826 (Fed. Cir. 1988); *Sun Studs, Inc. v. Applied Theory Assocs., Inc.*, 772 F.2d 1557, 1566 (Fed. Cir. 1985). Although not directly controlling authority, because it was based on a predecessor to Model Rule 1.7, the Federal Circuit's discussion of concurrent conflicts in *Picker* is certainly instructive as to the merits:

> The propriety of an attorney's conduct under DR 5-105(B) is "'measured not so much against the similarities in litigation, as against the duty of undivided loyalty which an attorney owes to each of his clients.'" *EEOC*, 749 F.2d at 622 (quoting *Cinema 5, Ltd. v. Cinerama, Inc.*, 528 F.2d 1384, 1386 (2d Cir. 1976)). Since clients of the same firm with conflicting or differing interests are protected by the consent and obviousness conditions of DR 5-105, and since Varian never gave its consent to the newly merged firm for the firm to represent Picker in the action against Varian, Jones Day's continuing representation of Picker in these two cases violated the undivided duty of loyalty that it owed to Varian. As the Ohio district court points out, while the firm may represent clients with inconsistent interests if the criteria of DR 5-105 are met, the firm may not choose to represent only one.
>
> Picker argues that the court's analysis in *Manning v. Waring, Cox,*

> *James, Sklar and Allen*, 849 F.2d 222 (6th Cir. 1988) supports its position that no conflict of interest exists in this particular merger situation. We disagree. Although the *Manning* case did involve a lawyer joining another firm, the Court of Appeals for the Sixth Circuit analyzed the conflict in that case according to the principles behind Canon 4 of the Model Code of Professional Responsibility, i.e., the duty owed by a law firm to a *former* client, instead of Canon 5, i.e., the duty of undivided loyalty a law firm owes *existing* clients. The court was also concerned about a potential violation of DR 5-105 based on an actual conflict of interest, but determined that a confused factual record prevented a ruling on that issue. The case was remanded to clarify the facts. We do note, however, that the Court of Appeals for the Sixth Circuit stated that if an actual conflict existed and knowing consent was not given by both clients, then the district court's decision of disqualification would stand affirmed. *Manning*, 849 F.2d at 227.

869 F.2d at 583 (emphasis added).

In sum, the Court has, as its own Rules provide, "inherent power and responsibility to supervise the conduct of attorneys who are admitted to practice before it." RCFC 83.2. It has adopted a code of conduct, and has explicit authority to subject attorneys to such "disciplinary action as the circumstances may warrant." RCFC 83.2(c)(1). Principles of federalism, and this Court's status as a court of limited jurisdiction, are no bar to the relief Plaintiff is requesting.

CONCLUSION

The Court has both the power and the primary responsibility to address ethical violations in cases before it. H&H's continued representation of Intervenor is such a violation. The Court should exercise its authority and disqualify H&H from representing Intervenor in this matter.

Respectfully submitted,

/s/ Michael A. Hordell
Michael A. Hordell
PEPPER HAMILTON LLP
600 14th Street, N.W., Suite 500

Washington, DC 20005-2004
Telephone: (202) 220-1200
Facsimile: (202) 220-1665

*Attorney for L-3 Communications Corporation*
*Link Simulation & Training Division*

Of Counsel
Charles H. Carpenter
Sean P. Bamford
PEPPER HAMILTON LLP

Dated: June 3, 2006