# In The United States Court of Federal Claims

| | |
|---|---|
| L-3 COMMUNICATIONS CORP.,<br><br>Plaintiff,<br><br>v.<br><br>U.S. DEPARTMENT OF THE INTERIOR,<br><br>Defendant, and<br><br>LOCKHEED MARTIN SERVICES, INC.,<br><br>Defendant-Intervenor. | BID PROTEST<br><br>No. 06-431<br><br>Judge Allegra |

**DEFENDANT-INTERVENOR'S OPPOSITION**
**TO PLAINTIFF'S MOTION TO DISQUALIFY INTERVENOR'S COUNSEL**

Michael F. Mason
Hogan & Hartson
555 Thirteenth Street, NW
Washington, D.C. 20004
202-637-5499
202-637-5910 (fax)
MFMason@HHLaw.com

Of Counsel:

Allison D. Pugsley
Hogan & Hartson
555 Thirteenth Street, NW
Washington, D.C. 20004
202-637-6817
202-637-5910 (fax)
ADPugsley@HHLaw.com

Dated: June 5, 2006

# TABLE OF CONTENTS

Page

STATEMENT OF THE ISSUES....3

STATEMENT OF RELEVANT FACTS....3

ARGUMENT....8

I. PLAINTIFF IS NOT, AND NEVER HAS BEEN, A CLIENT OF HOGAN & HARTSON....10

A. Legal Representation of a Corporation Normally Does Not Extend to Its Affiliates for Conflicts Purposes....10

B. Hogan & Hartson and Titan Specifically Agreed that Hogan & Hartson's Representation Excluded Titan Affiliates....14

II. EVEN IF PLAINTIFF AND TITAN WERE CONSIDERED THE SAME ENTITY, PLAINTIFF WOULD NONETHELESS BE BOUND BY THE ADVANCE CONSENT PROVISIONS OF THE HOGAN & HARTSON/TITAN ENGAGEMENT AGREEMENT....16

III. EVEN IF THERE WERE A CONFLICT, SUCH CONFLICT WAS "THRUST UPON" HOGAN & HARTSON AND DOES NOT REQUIRE COUNSEL TO WITHDRAW IN THIS PROCEEDING....20

IV. HOGAN & HARTSON HAS NOTIFIED TITAN OF ITS WITHDRAWAL AS COUNSEL FOR TITAN BASED ON TITAN'S PARENT'S REPUDIATION OF THE HOGAN & HARTSON/TITAN ENGAGEMENT AGREEMENT....20

V. EVEN IF A CONFLICT DID EXIST, DISQUALIFICATION IS NOT THE APPROPRIATE SANCTION....21

VI. CONCLUSION....23

# TABLE OF AUTHORITIES

## CASES

*Bayside Federal Savings & Loan Assoc. v. United States*, 57 Fed. Cl. 18, 20 (2003) ................... 9

*Central Milk Producers Co-op v. Sentry Food Stores*, 573 F.2d 988, 991 (8th Cir. 1978).......... 21

*Evans v. Artek Sys. Corp.*, 715 F.2d 788, 794 (2d Cir.1983)....................................................... 8

*Fisions Corp. v. Atochem North America*, 1990 WL 180551 (SDNY 1990)............................... 19

*General Cigar Holdings, Inc. v. Altadis*, 144 F.Supp.2d 1334 (S.D. Fla., 2001)................... 18, 19

*Reuben H. Donnelley Corp. v. Sprint Publishing & Advertising*, 1996 WL 99902 at *2 (N.D. Ill. 1996) ............................................................................................ 9, 13, 15

*SWS Financial Fund A. v. Salomon Bros*., Inc. 790 F. Supp. 1392, 1399 (N.D. Ill. 1992)...... 9, 22

*Tannahill v. United States*, 25 Cl. Ct. 149, 164 (1992) ............................................................ 9

*United States v. Miller*, 624 F.2d 1198, 1201 (3rd Cir. 1980)................................................... 21

*W.T. Grant Co. v. Haines*, 531 F.2d 671, 677 (2d Cir. 1976)..................................................... 21

## RULES

RCFC 83.2(c)............................................................................................................. 8

## ETHICS RULES AND OPINIONS

ABA Comm. On Ethics and Prof'l Responsibility, Formal Op., 95-390 (Jan. 25, 1995) ........... 12

ABA Formal Opinion 05-436 .................................................................................... 18

D.C. Ethics Opinion 116 (1982) ............................................................................... 14

Md. Bar Ass'n Comm. on Ethics, Op. No. 87-19............................................................ 12

N.Y. County Lawyers' Ass'n Comm. on Prof'l Ethics, Op. No. 684 (July 8, 1991) .................. 12

D.C. Rule 1.7(d)........................................................................................................ 2, 8, 10, 20

Florida Bar rule 4-1.7.......................................................................................................... 18

Model Rule 1.7............................................................................................................... 11, 12

# In The United States Court of Federal Claims

| | |
|---|---|
| L-3 COMMUNICATIONS CORP.,<br><br>Plaintiff,<br><br>v.<br><br>U.S. DEPARTMENT OF THE INTERIOR,<br><br>Defendant, and<br><br>LOCKHEED MARTIN SERVICES, INC.,<br><br>Defendant-Intervenor. | BID PROTEST<br><br>No. 06-431<br><br>Judge Allegra |

**DEFENDANT-INTERVENOR'S OPPOSITION**
**TO PLAINTIFF'S MOTION TO DISQUALIFY INTERVENOR'S COUNSEL**

Defendant-Intervenor, Lockheed Martin Services, Inc. ("Lockheed Martin"), respectfully requests that this Court deny the motion of Plaintiff, L-3 Communications Corporation, to disqualify Hogan & Hartson LLP ("Hogan & Hartson") as counsel for Lockheed Martin in this proceeding. Hogan & Hartson has investigated Plaintiff's accusation and hereby confirms that the assertion that our firm has a conflict of interest is completely devoid of factual and legal merit.

As discussed more fully below, Plaintiff has never been a client of Hogan & Hartson. Although Hogan & Hartson did represent Plaintiff's subsidiary, The Titan Corporation, a separate legal entity later renamed L-3 Communications Titan Corporation, ("Titan"), the applicable rules of professional conduct provide that a law firm's representation of a subsidiary corporation does not automatically extend to that corporation's affiliates, including its parent corporation. None of the limited exceptions to this rule apply here. Moreover, the scope of

Hogan & Hartson's representation of Titan was governed by an engagement agreement by which Titan retained Hogan & Hartson that specifically stated that Hogan & Hartson's representation extended only to Titan and ***not to its affiliates.*** This same engagement agreement also contained certain informed consents regarding the parties' handling of potential future conflicts that are not substantially and adversely related to the matters the firm handled for Titan. Plaintiff provides no legal authority for why this engagement agreement is not operative in defining the scope and limitations of Titan's engagement of Hogan & Hartson.

As a result of its parent corporation's (Plaintiff's) repudiation in this proceeding of the agreements between Hogan & Hartson and Titan, including the provisions of the engagement agreement referenced above, Hogan & Hartson has notified Titan that pursuant to Rule 1.16 of the District of Columbia Rules of Professional Conduct (the "D.C. Rules"), Hogan & Hartson can no longer represent Titan, and that representation has now ceased. Plaintiff's repudiation of these agreements was not reasonably foreseeable by Hogan & Hartson prior to the commencement of this proceeding and otherwise provides no basis to require Hogan & Hartson to withdraw from its representation of Lockheed Martin. *See* D.C. Rule 1.7(d).

Finally, even assuming *arguendo* a conflict did exist, this Court and other courts have made it clear that the drastic sanction of disqualification is strongly disfavored. That is especially true where, as here, Plaintiff has not alleged prejudice, the matters Hogan & Hartson has handled for Titan are entirely unrelated to Plaintiff's bid protest, Hogan & Hartson has not received any client confidences from Titan related to this bid protest, the only work Hogan & Hartson has performed for Titan is on matters for which Hogan & Hartson was retained prior to Titan's acquisition by Plaintiff, and Hogan & Hartson's disqualification as counsel would materially prejudice Lockheed Martin in this proceeding.

Accordingly, Plaintiff's motion should be dismissed.

## **STATEMENT OF THE ISSUES**

(1) Whether Plaintiff is a client of Hogan & Hartson such that Hogan & Hartson's representation of Defendant-Intervenor in this proceeding constitutes a prohibited conflict of interest under the applicable rules of professional conduct.

(2) Whether the alleged violation of the rules of professional conduct is so serious as to warrant the disqualification of Hogan & Hartson as counsel for Defendant-Intervenor.

## **STATEMENT OF RELEVANT FACTS**

The relevant facts directly contradict Plaintiff's allegations that Hogan & Hartson has a current attorney-client relationship with L-3 Communications Corporation or that a legal conflict of interest exists requiring Hogan & Hartson to withdraw as counsel in this proceeding. The sole attorney-client relationship was between Hogan & Hartson and Titan, which Plaintiff acquired by stock purchase in July, 2005. Although Plaintiff's brief discusses Titan as a "division," Plaintiff has no basis for ignoring the fact that Titan and L-3 Communications Corporation are separate legal entities.

Hogan & Hartson's representation of Titan was governed by a written engagement agreement between Hogan & Hartson and Titan dated September 9, 1999. Exhibit 1 ("Ex. 1"), Appx. at 1. This agreement clearly states that Hogan & Hartson's representation pertains ***solely*** to Titan and does not extent to Titan's affiliates. Specifically, the agreement, signed by Titan's General Counsel, states the parties' understanding that "Titan Corporation is [Hogan & Hartson's] client for specific matters on which it engages [Hogan & Hartson], and [Hogan & Hartson] ***shall not be deemed to represent its affiliates*** unless Titan Corporation advises [Hogan & Hartson] that such entities are directly involved in or affected by

[Hogan & Hartson's] representation of Titan Corporation." Ex. 1, Appx. at 3 (emphasis added). At no time did Titan or Plaintiff ever advise Hogan & Hartson that any of the matters on which Hogan & Hartson was representing Titan directly involved or affected Plaintiff. In fact, Plaintiff's own brief makes clear that Hogan & Hartson's only representation of on-going matters was for Titan. Plaintiff's Brief ("Pl.'s Br.") at 1.

Within the engagement agreement Titan also provided its advance consent for Hogan & Hartson to represent other clients involving matters that are not substantially and adversely related to the matters on which Hogan & Hartson represents Titan. The very limited matters on which Hogan & Hartson represented Titan at the time of Plaintiff's filing of its bid protest had no relation whatsoever to Plaintiff's bid protest action. Plaintiff does not contend otherwise.

In September 2003, in connection with a proposed transaction between Titan and Lockheed Martin, Hogan & Hartson explained to the Titan Senior Vice President and General Counsel and separately to its Board of Directors that Lockheed Martin was a long-time client of Hogan & Hartson, especially with respect to government-contract matters. As a precondition to Hogan & Hartson's representation of Titan in that matter, Titan specifically consented to Hogan & Hartson's continuing and future representations of Lockheed Martin in unrelated matters.

On July 29, 2005, Plaintiff announced its acquisition of Titan. According to an official press release, Titan had been renamed "L-3 Communications Titan Corporation." Press Release Dated July 29, 2005, *L-3 Communications Completes Acquisition of The Titan Corporation; Completes Related Debt Offerings and Tender Offer*, linked on L-3's website, Ex. 2, Appx. at 6. During the June 2, 2006 status conference in this proceeding, counsel for Plaintiff referred to

Titan as a "subsidiary" of Plaintiff. Although in its Brief Plaintiff's counsel refers to Titan as a "division" of Plaintiff, Pl.'s Br. at 1, Titan is a separate corporation that is operated independently from Plaintiff. In fact, as reflected in Plaintiff's November 23, 2005 SEC filing, the renamed L-3 Communications Titan Corporation is listed as a separate legal entity with its own employer identification number. Ex. 3, Appx. at 12. In describing certain promissory notes, Plaintiff stated: "The outstanding notes are, and the exchange notes will be, jointly and severally guaranteed on a senior subordinated basis by certain of our current and future domestic restricted subsidiaries, including Titan and certain of its subsidiaries . . ." *Id.*, Appx. at 14. In addition, Titan's website clearly indicates that Titan remains a separate business operation, describing itself as follows:

> Founded in 1981 and headquartered in San Diego, California, L-3 Communications Titan is a leading provider of comprehensive information and communications products, solutions, and services for National Security and the Security of our Homeland. Serving the Department of Defense, intelligence agencies, and other government customers.

*See* Titan's website at www.titan.com/about/. Titan's headquarters has always resided in San Diego, California. Plaintiff states that its headquarters is in New York, New York. *See* http://www.l-3com.com/about_l3/general_info/. Titan's website further states that Titan has "approximately 12,500 employees and annualized sales of approximately $2.5 billion." *See* www.titan.com/about/.

Plaintiff L-3 has never engaged Hogan & Hartson to represent it on any matter and Hogan & Hartson has never performed legal work on L-3's behalf. In addition, any post-acquisition work that Hogan & Hartson performed for Titan involved ongoing work that began prior to L-3's acquisition of Titan under the terms set out in the Titan/Hogan & Hartson engagement agreement. Plaintiff does not allege that any of this on-going work for Titan is even

remotely related to this matter. Any legal fees owed by Titan are credited against an escrow account that Titan established with Hogan & Hartson in September 2004, well before its acquisition by L-3. Plaintiff does not allege that Titan is its "alter ego" for purposes of piercing the corporate veil such that Hogan & Hartson's representation of Titan should be imputed to L-3.

Hogan & Hartson denies Plaintiff's contention that Hogan & Hartson is aware that "Plaintiff has a single legal department for its corporate family, and considers itself and its divisions a single united entity for purposes of legal conflicts of interests." Pl.'s Br. at 1. In fact, when Hogan & Hartson sends any legal bills (which only draw down funds from the escrow account Titan established with Hogan & Hartson in September 2004), those legal bills are addressed to "Cheryl Barr, Senior VP and General Counsel, L-3 Titan Corporation, 3033 Science Park Road, San Diego, CA 92121." The person to whom Hogan & Hartson bills are sent had been Assistant General Counsel of Titan before L-3 acquired the company, and the street address is the same street address to which Hogan & Hartson sent its bills prior to L-3's acquisition of Titan. (As indicated above, the address is Titan's corporate headquarters.)

Plaintiff relies upon a February 21, 2006 Audit Response Letter that Hogan & Hartson addressed to the PricewaterhouseCoopers accounting firm. Pl.'s Br. at 1. Plaintiff itself ***admits*** that the specific matters discussed in the February audit letter all concerned Hogan & Hartson's then "***current representation of Titan***"—not L-3 Communications Corporation—and by its terms and content the letter addressed only matters that had commenced prior to Plaintiff's acquisition of Titan. Pl.'s Br. at 1 (emphasis added).

With respect to the current dispute, on the morning of June 1, 2006, Mr. Mason called counsel of record for Plaintiff, Mr. Hordell, as well as Mr. Carpenter, to provide notice that Hogan & Hartson intended to intervene in the bid protest on behalf of Lockheed Martin and to

ask whether Plaintiff had any objections. Mr. Carpenter returned Mr. Mason's telephone call shortly after noon and indicated that he would check with his client and stated that Mr. Mason should consider Plaintiff as having no objections to the anticipated motion to intervene unless informed otherwise by 5:00 p.m. At approximately 5:10 p.m., Mr. Carpenter left Mr. Mason a voice message stating that "I think we have an issue." When Mr. Mason returned Mr. Carpenter's phone call shortly thereafter, Mr. Carpenter stated that Plaintiff might have a "problem" because of an alleged conflict as evidenced by the above-described audit response letter, but that they were still reviewing the matter to determine whether a conflict in fact existed. Mr. Mason informed Mr. Carpenter that Hogan & Hartson would investigate this issue.

After discussing the issue with Hogan & Hartson partners with knowledge of the relevant facts, the Co-Chair of Hogan & Hartson's Ethics Committee, and members of Hogan & Hartson's Conflicts department, Mr. Mason called and confirmed for Mr. Carpenter that the firm does not represent Plaintiff. Mr. Mason identified for Mr. Carpenter the existence of the Titan/Hogan & Hartson engagement agreement and confirmed, when asked, that the agreement contains advance consents. Mr. Mason also informed Mr. Carpenter that the agreement identified Titan as Hogan & Hartson's client and that the agreement stated that Hogan & Hartson would not be deemed to represent Titan's affiliates. Plaintiff's counsel admits it still has not reviewed the agreement governing Hogan & Hartson's representation of Titan. Pl.'s Br. at 4, n.6.

In addition, in its Brief and on behalf of its Titan subsidiary, Plaintiff repudiates the agreements that Titan had with Hogan & Hartson. Pl.'s Br. at 4 n.6 ("whatever Titan said before it was owned by Plaintiff does not bind Plaintiff as to new conflicts against it."). Because Plaintiff, which is Titan's parent, has repudiated the engagement agreement that governed

Hogan & Hartson's representation of Titan, Hogan & Hartson today informed Titan that its continued representation of Titan is untenable under D.C. Rule 1.16, requiring Hogan & Hartson's immediate withdrawal as counsel for Titan. Ex. 4, Appx. at 15.

Hogan & Hartson's government contracts-related and other work for Lockheed Martin and its predecessor companies extends back to at least 1991. With respect to the Joint Terminal Attack Controller Training and Rehearsal System ("JTAC") procurement, Lockheed Martin retained Hogan & Hartson in April 2006 with respect to the agency-level protest of the same procurement that L-3 filed prior to the current action. Hogan & Hartson's work has included analyzing L-3's redacted bid protest filed in that action, performing substantial legal research, and interviewing Lockheed Martin personnel regarding L-3 bid protest grounds, which the procuring Government agency determined lacked merit. Time, effort, and resources spent by Hogan & Hartson on the facts and law related to L-3's bid protest have been significant.

**ARGUMENT**

The facts as outlined above strongly suggests that Plaintiff's objective here is to gain a tactical advantage in this bid protest action through harassment and disruption of Lockheed Martin's defense of its contract award. Pursuant to RCFC 83.2(c), the Court has jurisdiction to review acts or omissions of counsel practicing before it that raise ethical concerns. Plaintiff, however, bears a heavy burden of proving facts that would require the disqualification of opposing counsel. *Evans v. Artek Sys. Corp.*, 715 F.2d 788, 794 (2d Cir. 1983). Indeed, as stated in a case cited approvingly by Plaintiff, "Courts have held that disqualification of an attorney is a drastic, perhaps draconian tactic. . ." and "[m]otions to disqualify are to be viewed with extreme caution because they can be used as techniques of harassment." *Tannahill v. United States*, 25 Cl. Ct. 149, 164 (1992) (Horn, J.) (citations omitted), *citing Freeman v.*

*Chicago Musical Instr. Co.*, 689 F.2d 715, 722 (7th Cir. 1982); *accord Bayside Fed. Sav. & Loan Assoc. v. United States*, 57 Fed. Cl. 18, 20 (2003) (Smith, J.) ("Courts are cautioned that disqualification motions should be viewed with a special eye toward preventing their use as a strategic litigation device or a technique of harassment."). The Court explained the three interests to be balanced when considering a motion for disqualification: "(1) the client's interest in being represented by the counsel of its choice; (2) the opposing party's interest in a trial without prejudice due to disclosures of confidential information; and (3) the public's interest in the scrupulous administration of justice." *Tannahill*, 25 Cl. Ct. at 164 (citations omitted). None of those objectives are served by Plaintiff's motion.

In *Reuben H. Donnelley Corp. v. Sprint Publishing & Advertising*, 1996 WL 99902 at *2 (N.D. Ill. 1996) (unpub.), the court set out a two-step test for alleged Rule 1.7 conflicts: "First, the court considers whether an ethical violation has occurred. Second, if the court finds such a violation, the court then determines whether disqualification is the appropriate remedy." *Id.* (*citing Freeman*, 689 F.2d at 721; *SWS Financial Fund A. v. Salomon Bros., Inc.*, 790 F. Supp. 1392, 1399 (N.D. Ill. 1992)). 1/

As discussed below, Plaintiff fails to satisfy its heavy burden of proving that the Court should impose the drastic sanction of disqualifying Hogan & Hartson from representing Lockheed Martin in this action based on an alleged conflict of interest stemming from Hogan & Hartson's work for Titan. Plaintiff simply is not and has not been a client of Hogan & Hartson. Even if Plaintiff was a client—which it is not—Plaintiff would then step into

---

1/ Comment 4 to the "Scope" section of the D.C. Rules provides that "nothing in the Rules or associated Comments or this Scope section is intended to confer rights on an adversary of a lawyer to enforce the Rules in a proceeding other than a disciplinary proceeding. A tribunal presented with claims that the conduct of a lawyer appearing before that tribunal requires, for example, disqualification of the lawyer and/or the lawyer's firm may take such action as seems appropriate in the circumstances, which may or may not involve disqualification."

the shoes of its subsidiary (a separate legal entity) and be a party to the agreements between Titan and Hogan & Hartson. Either way, Hogan & Hartson would be permitted to participate in this proceeding. Moreover, the "thrust upon" conflict rule stated in D.C. Rule 1.7(d) would permit Hogan & Hartson's continued representation even if Plaintiff's allegations were true. Finally, Plaintiff has made no allegations that Hogan & Hartson's representation of Lockheed Martin would prejudice Plaintiff.

In sum, Plaintiff bases its allegations on several legal theories for which it fails to support, on contentions that are contradicted by the operative engagement agreement, and on an audit response letter sent by Hogan & Hartson addressed to Pricewaterhousecoopers that solely discusses Hogan & Hartson's work for Titan. This "evidence" is much too thin of a reed upon which to support such serious accusations.

## I. PLAINTIFF IS NOT, AND NEVER HAS BEEN, A CLIENT OF HOGAN & HARTSON.

Plaintiff does not allege that L-3 Communications Corporation has ever engaged Hogan & Hartson to represent it. Instead, Plaintiff contends that Titan is a client of Hogan & Hartson, and because Plaintiff is the parent corporation of Titan, "Titan and Plaintiff are not distinguishable for conflicts purposes." Pl.'s Br. at 3 and n.3. Plaintiff's contention fails for lack of support.

### A. Legal Representation of a Corporation Normally Does Not Extend to Its Affiliates for Conflicts Purposes.

Plaintiff provides no meaningful support for its contention that it and Titan "are not distinguishable for conflicts purposes." Plaintiff provides only an unexplained reference to "comment 15 to D.C. Rule 1.7" and a vague statement that "[a]lthough the comments to the

Model Rules are not as thorough on this point, the text of the rules is sufficiently similar that the same result would apply." Pl.'s Br. at 3, n.3.

The Comment to the American Bar Association Model Rules of Professional Conduct (the "ABA Model Rules") that Plaintiff apparently refers to is Comment 34 to Model Rule 1.7, which provides in part that "[a] lawyer who represents a corporation or other organization ***does not***, by virtue of that representation, necessarily represent any constituent or affiliated organization, such as a parent or subsidiary." (Emphasis added). Similarly, Comment 13 to D.C. Rule 1.7, which Plaintiff fails to reference, states:

> As is provided in Rule 1.13, the lawyer who represents a corporation, partnership, trade association or other organization-type client is deemed to represent that specific entity, and not its shareholders, owners, partners, members or "other constituents." Thus, for purposes of interpreting this Rule, the specific entity represented by the lawyer is the "client." ***Ordinarily that client's affiliates (parents and subsidiaries), other stockholders and owners, partners, members, etc., are not considered to be clients of the lawyer. . . . A fortiori, and consistent with the principle reflected in Rule 1.13, the lawyer for an organization normally should not be precluded from representing an unrelated client whose interests are adverse to the interests of an affiliate (e.g., parent or subsidiary)***, stockholders and owners, partners, members, etc., of that organization in a matter that is separate from and not substantially related to the matter on which the lawyer represents the organization.

(Emphasis added). Thus, the general rule under both the ABA Model Rules and the D.C. Rules is that a law firm is not deemed to represent an affiliate (Plaintiff) of a client (Titan) and can represent an unrelated client (Lockheed Martin) in matters adverse to the affiliate (Plaintiff). Plaintiff does not allege, and it cannot otherwise show, that Hogan & Hartson's representation of

Lockheed Martin in this proceeding is substantially related to any matter on which Hogan & Hartson represented Titan. 2/

Plaintiff's position was rejected by the ABA Standing Committee on Ethics in Formal Opinion Number 95-390. In considering the application of ABA Model Rule 1.7, the Standing Committee determined that no *per se* rule barring nonconsensual representation adverse to the interests of a corporate client's affiliate exists. ABA Comm. On Ethics and Prof'l Responsibility, Formal Op., 95-390 (Jan. 25, 1995); *see also* Md. Bar Ass'n Comm. on Ethics, Op. No. 87-19 (concluding that the lawyer for a subsidiary of a publicly traded corporation could ethically handle a suit against another subsidiary for the same company); N.Y. County Lawyers' Ass'n Comm. on Prof'l Ethics, Op. No. 684 (July 8, 1991) (opining that a firm that represents a parent corporation may represent a party with interests adverse to a subsidiary of the parent, in an unrelated matter, if the firm does not have access to confidential information adverse to the subsidiary). Under ABA Opinion 95-390, a lawyer with a corporate client does not necessarily represent all affiliates as additional clients, and therefore, may undertake representation adverse to one or more of those affiliates.

Also, Plaintiff has not shown that any of the narrow exceptions to the general rule would apply here. Specifically, ABA Opinion 95-390 provides an exception to the rule where: (1) "the circumstances are such that the affiliate should also be considered a client of the lawyer"; (2) "there is an understanding between the lawyer and the organizational client that the lawyer will avoid representation adverse to the client's affiliates"; or (3) "the lawyer's obligations to either the organizational client or the new client are likely to limit materially the lawyer's

---

2/ Notwithstanding Plaintiff's suggestions in footnote 7 regarding the "choice of law" provisions with respect to conflicts, it is clear that Maryland law does not apply to this action. The applicable choice of law provisions are set out in D.C. Rule 8.5.

representation of the other client." Plaintiff has identified no factual evidence and no legal authority that would support the Court applying any of these exceptions here. The facts discussed in the Relevant Facts section above demonstrate affirmatively that none of these exceptions are relevant. Indeed, with respect to circumstance (2), not only is there no agreement that Hogan & Hartson would avoid representations adverse to Titan's affiliates, the operative agreement specifically provides that representations adverse to Titan's affiliates need ***not*** be avoided.

In addition, Plaintiff has not alleged that Titan is Plaintiff's "alter ego," which is the exception that Plaintiff apparently alludes to in its footnote citation to Comment 15 to D.C. Rule 1.7. Under the applicable ABA Opinion regarding the "alter ego" exception, "[a] situation may arise when a lawyer should regard a client's affiliate as a client, but only if there is at least a 'disregard of corporate formalities and/or a complete identity of management and boards of directors.'" *Reuben H. Donnelley Corp. v. Sprint Publ'g & Adver.*, 1996 WL 99902 *3 (N.D. Ill. 1996) (unpublished) (quoting ABA Opinion 95-390 at 259). Plaintiff does not allege such a disregard of corporate formalities. The single piece of "evidence" advanced by Plaintiff potentially relevant to the "alter ego" exception pertains to Plaintiff's allegation that it "has a single legal department for its corporate family." Pl.'s Br. at 1. Hogan & Hartson denies knowledge of this purported fact. Hogan & Hartson receives payment from an escrow account Titan established in September 2004 and the legal bills drawing down on the escrow account are sent to Cheryl Barr, Senior VP and General Counsel, L-3 Titan Corporation, at Titan's headquarters in San Diego. The fact that Plaintiff's Secretary/General Counsel was copied on an audit response letter addressing specific matters all pertaining to Titan does not show that Hogan & Hartson was aware that Plaintiff purportedly maintains a single legal department for all

of its affiliates—notwithstanding that Hogan & Hartson sends bills drawing down on the Titan escrow arrangement to the Senior VP and General Counsel of L-3 Titan Corporation, not to Plaintiff. Nevertheless, Plaintiff provides no legal authority for the proposition that this alleged fact alone, even if true, would be sufficient to invoke the alter ego exception.

Moreover, as indicated in Comment 17 to D.C. Rule 1.7, a client and attorney may reach a "contrary agreement" that supersedes any of the exceptions to the general rule. As discussed below, Hogan & Hartson and Titan previously agreed that Hogan & Hartson's representation of Titan extended only to Titan and not to its affiliates.

### B. Hogan & Hartson and Titan Specifically Agreed that Hogan & Hartson's Representation Excluded Titan Affiliates.

D.C. Ethics Opinion 116 (1982) notes the importance of written retainer agreements to avoid ambiguities regarding the scope of a lawyer's responsibilities. Opinion 116 explained: "As we have stressed in a variety of contexts, the surest way to avoid ambiguity over what a lawyer has undertaken to do for a client is to execute a written retainer agreement." Similarly, ABA Opinion 95-390 emphasizes that the best solution for addressing the corporation affiliation issue is to clarify at the outset of the representation which entity or entities in the corporate family are to be the lawyer's clients. *Id.* at 1. Comment 17 to D.C. Rule 1.7 specifically provides that the scope of representation and identity of the client, including the "alter ego" exception noted in Comment 15, may be governed by agreement between the lawyer and his organization client.

Titan and Hogan & Hartson reached such an agreement as evidenced by their 1999 engagement agreement, which has governed Hogan & Hartson's legal representation of Titan. Ex. 1, Appx. at 1. The agreement specifically states that Hogan & Hartson shall not be deemed to represent any of Titan's affiliates, which would include Plaintiff here. The agreement

provides for an exception, but only in the event where Titan informs Hogan & Hartson that its representation is affecting an identified Titan's affiliate, a circumstance not applicable here.

Plaintiff's counsel has leveled these serious ethical charges at Hogan & Hartson admittedly without even reading the governing engagement agreement. Instead, while addressing the advance consent provisions of the engagement agreement (a provision separate from the client identification provision), Plaintiff's counsel invites this Court to make new law through its contention that "whatever Titan said before it was owned by Plaintiff does not bind Plaintiff as to new conflicts against it." Pl.'s Br. at 4 n.6. Plaintiff fails to cite to a single legal document for support of this novel contention, and Hogan & Hartson's research has found none. There is nothing in law supporting the proposition advanced by Plaintiff that the acquisition of an entity eviscerates any and all engagement (and presumably other kinds of ) agreements that the entity previously entered into. In fact, if that were the case, it would mean that Hogan & Hartson unwittingly has been representing Titan without the existence of any agreement with Titan, something that this firm simply would not do. Such a rule would cause substantial confusion within the legal community whenever a client acquires or is acquired by another entity.

In this regard, Hogan & Hartson invites the Court to review the ruling in *Reuben H. Donnelly Corp*., an unpublished yet instructive decision addressing the corporate affiliation conflict issue. 1996 WL 99902. In *Reuben H. Donnelly Corp.* , after the court concluded that the two companies should not be deemed the same for purposes of Illinois' version of Rule 1.7, the court further stated:

> If Sprint wishes to avoid these situations in the future, it can include in its representation agreements a provision that its law firm not accept representation against any of its affiliates and then regularly provide its law firms with updated lists of its affiliates.

> Perhaps Sprint should avoid hiring large law firms. It is clear that there is no easy solution for this ever-increasing problem.

*Id.* at *5. Here, if Plaintiff desires to treat all of its affiliates as a single corporate entity for legal conflicts purposes, it should make that point clear in the applicable engagement agreement. Not only has Plaintiff failed to do so, it did not even notify Hogan & Hartson of this allegedly internally held view (one that is contrary to the applicable default rules of professional conduct regarding affiliates) or that it deemed the Hogan & Hartson/Titan engagement agreement to no longer be operative.

## II. EVEN IF PLAINTIFF AND TITAN WERE CONSIDERED THE SAME ENTITY, PLAINTIFF WOULD NONETHELESS BE BOUND BY THE ADVANCE CONSENT PROVISIONS OF THE HOGAN & HARTSON/TITAN ENGAGEMENT AGREEMENT.

Assuming *arguendo* that Plaintiff and Titan were somehow deemed to be the same entity for client representation purposes, it would then follow that Plaintiff must be bound by the Hogan & Hartson/Titan engagement agreement. As part of the agreement, Titan provided Hogan & Hartson with its advance informed consent to represent clients in matters that are not substantially and adversely related to matters the firm is handling for Titan. If Plaintiff truly wishes to be in Titan's shoes, it logically follows that it would be bound by Titan's agreements regarding the scope and limitations of its counsel's representation.

D.C. Ethics Opinion 309 specifically provides that "***An advance waiver given by a client having independent counsel (in-house or outside) available to review such actions presumptively is valid***, however, even if general in character." 3/ *Id.* (emphasis added). The Opinion concludes: "In accordance with the foregoing, a client not independently represented by counsel (including in-house counsel) generally may waive conflicts of interest only where

---

3/ The Opinion notes that an advance waiver of conflicts will not be valid where the two matters are substantially related to one another—which is not the case here.

specific types of potentially adverse representations or specific types of adverse clients are identified in the waiver correspondence. [However,] [a] client that is independently represented by counsel generally may agree to waive such conflicts even where the specificity requirements set out in the preceding sentence are not satisfied." *Id.*

Similarly, Comment 22 to ABA Model Rule 1.7, entitled "Consent to Future Conflict," indicates that while general consents are less likely to be effective,

> if the client is an experienced user of the legal services involved and is reasonably informed regarding the risk that a conflict may arise, such consent is more likely to be effective, particularly if, e.g., the client is independently represented by other counsel in giving consent and the consent is limited to future conflicts unrelated to the subject of the representation.

Titan, a major corporation with more than 12,500 employees and $2.5 billion in annual revenue, certainly is "an experienced user of the legal services involved" and Hogan & Hartson's engagement agreement "reasonably informed [Titan] regarding the risk that a conflict may arise." ABA Model Rule 1.7, Comment 22. Nicholas Costanza, General Counsel of Titan, signed the engagement agreement, showing that Titan was "independently represented by other counsel in giving consent." *Id.* Furthermore, the advance consent provision states as follows:

> [Hogan & Hartson] understand[s] that Titan Corporation consents to the firm's current and future representation of any such other clients without the need for any further consents from Titan Corporation, as long as there is no direct conflict of interest. [Hogan & Hartson] understand[s] that no such direct conflict would exist where the representation of another client is not substantially and adversely related to the matters the firm is handling for Titan Corporation.

Ex. 1, Appx. at 3. The consent, therefore, "is limited to future conflicts unrelated to the subject of representation." ABA Model Rule 1.7, Comment 22. 4/ Thus, the advance consent provided by Titan in the engagement agreement is binding under the ABA Model Rules. *See* ABA Formal Opinion 05-436 (revoking formal opinion 93-372, and noting that "[g]eneral and open-ended consent is more likely to be effective when given by a client that is an experienced user of legal services, particularly if, for example, the client is independently represented by other counsel in giving consent and the consent is limited to future conflicts unrelated to the subject of the representation.").

Moreover, in 2003 when Titan sought Hogan & Hartson's representation in a matter involving Lockheed Martin, Hogan & Hartson made it clear that it would do so only after receiving Titan's consent to Hogan & Hartson's continuing and future representations of all unrelated matters for Lockheed Martin. Hogan & Hartson made Titan aware of its long-standing relationship with Lockheed Martin, including in a presentation on September 5, 2003 that Hogan & Hartson made to Titan's Board of Directors.

*General Cigar Holdings, Inc. v. Altadis*, 144 F. Supp. 2d 1334 (S.D. Fla., 2001), is instructive on this issue. In that case defendant moved to disqualify plaintiff's law firm. The court denied the motion, because the law firm obtained advance consent permitting the concurrent representation. *Id.* at 1336 (interpreting Florida Bar Rule 4-1.7, which is almost

---

4/ The ABA has defined "unrelated" as not "substantially related to" as that term is used in Rule 1.9 and its Comment [3], *i.e.*, "that the future matters as to which the client's consent to the lawyer's conflicting representation is sought do not involve the same transaction or legal dispute that is the subject of the lawyer's present representation of the consenting client, and are not of such a nature that the disclosure or use by the lawyer of information relating to the representation of the consenting client would materially advance the position of the future clients." ABA Formal Op. 05-436.

identical to the ABA Model Rules). The engagement letter with defendant in that case provided as follows:

> Our firm has in the past and will continue to represent clients listed on the attached Exhibit A (each an "Exhibit A Client") in matters not substantially related to this engagement. Accordingly, each Client agrees to waive any objection, based upon this engagement, to any current or future representation by the firm of any of the Exhibit A clients, its respective parent, subsidiaries and affiliates in any matter not substantially related to this representation. Of course, we will not accept any representation that is adverse to you in this matter.

*Id.* The court noted that "the engagement letter in the instant case was reviewed by outside counsel and the respective representatives of the corporation." *Id.* at 1339. Additionally, the clients that consented were "knowledgeable and sophisticated parties." *Id.* Further, the consenting party was aware of law firm's relationship with plaintiff. *Id.*; *see also Fisions Corp. v. Atochem North America*, 1990 WL 180551 at *4-6 (SDNY 1990) (unpubl.) (holding an advance consent valid where the objecting client knew that the firm had a long standing relationship with Atochem (formerly Pennwalt) and would accept the client only on the condition that its representation would not preclude the firm from continuing to act as counsel for Pennwalt). Finally, the Court noted that "[a]llowing for advance, informed consent has significant advantages to both clients and lawyers alike, especially where large firms and sophisticated clients are involved." *General Cigar Holdings,* 144 F. Supp. 2d at 1339.

Accordingly, the advance consent agreement is binding. Plaintiff has not met its burden of proving otherwise.

## III. EVEN IF THERE WERE A CONFLICT, SUCH CONFLICT WAS "THRUST UPON" HOGAN & HARTSON AND DOES NOT REQUIRE COUNSEL TO WITHDRAW IN THIS PROCEEDING.

D.C. Rule 1.7(d) specifically provides that "if a conflict not reasonably foreseeable at the outset of representation arises under paragraph (b)(1) after the representation commences, and is not waived under paragraph (c), a lawyer need not withdraw from any representation . . . ." Here, Hogan & Hartson was not and reasonably should not have been aware of any alleged conflict, because its engagement agreement with Titan specifically provides that Hogan & Hartson's representation extended solely to Titan and not to Titan's affiliates, including Plaintiff.

As indicated above, Hogan & Hartson's work for Lockheed Martin on Plaintiff's agency-level bid protest of the subject JTAC procurement began in mid-April. Only after Mr. Carpenter indicated to Mr. Mason on the evening of June 1, 2006 that there might be a conflict and Plaintiff's subsequent repudiation of the Hogan & Hartson/Titan engagement agreement in its brief was Hogan & Hartson made aware of the alleged conflict. Under the express terms of D.C. Rule 1.7(d), Hogan & Hartson need not withdraw from its representation in this proceeding because Plaintiff only now has repudiated the Titan engagement agreement, which was "not reasonably foreseeable" and was otherwise "thrust upon" Hogan & Hartson.

## IV. HOGAN & HARTSON HAS NOTIFIED TITAN OF ITS WITHDRAWAL AS COUNSEL FOR TITAN BASED ON TITAN'S PARENT'S REPUDIATION OF THE HOGAN & HARTSON/TITAN ENGAGEMENT AGREEMENT.

By letter dated June 5, 2006, Hogan & Hartson has notified Titan of its immediate withdrawal as counsel for Titan on any matters on which Hogan & Hartson has represented Titan. Plaintiff's repudiation the past few days of Titan's past agreements, especially including the Hogan & Hartson/Titan engagement agreement, has made it impossible for Hogan & Hartson to continue representing Titan on the several matters that remained open after its acquisition of L-3

Communications Corporation (none of these is related to Plaintiff's bid protest). As discussed above, the engagement agreement explicitly identified Titan as the client to the exclusion of its affiliates and contained informed consents regarding potential future conflicts, all of which were preconditions to Hogan & Hartson's representation of Titan. Accordingly, even if there had been a conflict as alleged by Plaintiff, it is now clear to Plaintiff none exists today. Moreover, Plaintiff's repudiation of past Titan agreements and Hogan & Hartson's withdrawal of its representation of Titan makes it even clearer that Hogan & Hartson's participation in this proceeding on behalf of Defendant-Intervenor would in no way prejudice Plaintiff.

The facts evidence that even if Plaintiff were a client, which it is not, this situation is not a "hot potato" situation where a law firm drops one client in lieu of more lucrative business. This situation arose because Plaintiff has repudiated the engagement and other agreements previously entered into by its subsidiary, Titan. Hogan & Hartson has never consented to the servitude inherent in Plaintiff's position that Hogan & Hartson must be deemed to represent the entire L-3 Communications Corporation corporate family. Hogan & Hartson has not and cannot agree to such terms. Accordingly, pursuant to D.C. Rule 1.16, Hogan & Hartson is effecting its withdrawal as counsel for Titan.

## V. EVEN IF A CONFLICT DID EXIST, DISQUALIFICATION IS NOT THE APPROPRIATE SANCTION.

The case law makes it clear that even where a conflict exists, it by no means necessarily follows that disqualification is an appropriate remedy. "Although disqualification is ordinarily the result of a finding that a disciplinary rule prohibits an attorney's appearance in a case, disqualification is never automatic." *United States v. Miller*, 624 F.2d 1198, 1201 (3rd Cir. 1980); *accord. Central Milk Producers Co-op v. Sentry Food Stores, Inc.*, 573 F.2d 988, 991 (8th Cir. 1978); *W.T. Grant Co. v. Haines*, 531 F.2d 671, 677 (2d Cir. 1976). Disqualification is not

appropriate, for example, where: "[t]here is no danger in this case that [plaintiff's attorney's] advocacy of [plaintiff] would be less than fully zealous, the trial would not be tainted by [plaintiff's attorney's] continued representation of [plaintiff], the subject of th[e] litigation is not substantially related to the work [plaintiff's attorney] has done for [defendant], and disqualification would simply not be the appropriate remedy." *SWS Financial Fund A v. Salomon Brothers, Inc.*, 790 F. Supp. 1392, 1403 (S.D. Ill. 1992) . 5/

Here, none of the work Hogan & Hartson has performed for Titan is related to Plaintiff's bid protest. Hogan & Hartson has not received any confidences from Titan that are related to Plaintiff's bid protest. Plaintiff does not allege that Hogan & Hartson's representation of Lockheed Martin in this proceeding would somehow prejudice Plaintiff or the proceedings.

On the other hand, on behalf of Lockheed Martin, Hogan & Hartson has performed substantial analyses of the matters underlying Plaintiff's bid protest allegations beginning with Plaintiff's filing of its redacted agency-level bid protest. If this court were to disqualify Hogan & Hartson, there would be delay and duplication of spent resources as Lockheed Martin searched for new counsel and for new counsel to gain the knowledge now possessed by Hogan & Hartson with respect to Plaintiff's bid protest and the underlying procurement.

Accordingly, disqualification of Hogan & Hartson is not an appropriate remedy.

---

5/ Plaintiff references four cases related to this issue. In each of these cases, however, the court denied the motion to disqualify, underscoring the extreme nature of the remedy sought by Plaintiff *See* Pl.'s Brief at 5-6, citing *Bayside Fed. Sav. & Loan Ass'n v. United States*, 57 Fed. Cl. 18 (2003) (Smith, J.) (denying motion to disqualify and stating: "Courts have cautioned that disqualification motions should be viewed with a special eye toward preventing their use as a strategic litigation device or a technique for harassment."); *Tannahill v. United States*, 25 Cl. Ct. 149 (1992) (Horn, J.) (denying motion to disqualify and stating "[m]otions to disqualify are to be viewed with extreme caution because they can be used as techniques of harassment. . ." [and ] "[j]udges should be aware that ruling in favor of disqualification can encourage vexatious techniques and increase cynicism by the public."); *Syscon v. United States*, 10 Cl. Ct. 2000 (1986) (Wiese, J.) (denying motion to disqualify and stating that one of moving party's contentions "borders on frivolous.").

## VI. CONCLUSION.

Plaintiff is not a client of Hogan & Hartson and Plaintiff fails to satisfy its burden of proving that Hogan & Hartson has violated any rule of professional conduct. Hogan & Hartson respectfully requests the Court to deny Plaintiff's motion.

Respectfully submitted,

/s/ Michael F. Mason

Michael F. Mason
Hogan & Hartson
555 Thirteenth Street, NW
Washington, D.C. 20004
202-637-5499
202-637-5910 (fax)
MFMason@HHLaw.com

Of Counsel:

Allison D. Pugsley
Hogan & Hartson
555 Thirteenth Street, NW
Washington, D.C. 20004
202-637-6817
202-637-5910 (fax)
ADPugsley@HHLaw.com

Dated: June 5, 2006

**CERTIFICATE OF SERVICE**

I hereby certify that on June 5, 2006, a copy of the foregoing Defendant-Intervenor's Opposition to Plaintiff's Motion to Disqualify Intervenor's Counsel was filed electronically. Service in electronic cases is effectuated through the Court's electronic filing system.

/s/ Michael F. Mason
Michael F. Mason