**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
**BID PROTEST**

| | | |
|---|---|---|
| L-3 COMMUNICATIONS CORP., Plaintiff, | ) | |
| v. | ) | No. 1:06-cv-431<br>Judge: Francis M. Allegra |
| THE UNITED STATES, Defendant. | ) | |

**REPLY BRIEF IN SUPPORT OF PLAINTIFF'S MOTION**
**<u>TO DISQUALIFY INTERVENOR'S COUNSEL</u>**

## FACTUAL BACKGROUND

To the facts recited in Plaintiff's opening Brief, Plaintiff adds only the following. As stated in Footnote 5 of the Brief, Hogan & Hartson L.L.P. ("H&H") informed Plaintiff's counsel that it had received an advance waiver of conflicts of interest in its engagement letter with Titan. When Plaintiff's counsel asked whether H&H's Mr. Michael Mason had a copy of this letter "handy," he answered "No."[1] As time was of the essence in this matter Plaintiff's counsel did not have an opportunity to review the engagement letter prior to filing its motion to disqualify Intervenor's counsel, and did not purse the matter after the June 2, 2006 status conference, because H&H appeared to abandon its advance waiver position in favor of a jurisdictional argument.

[1] At no time prior to its submission of its opposition brief did H&H provide this letter to Plaintiff's counsel- -although it knew that counsel did not have the letter on Thursday, June 1, and still did not have the letter on Saturday, June 3.

Plaintiff's counsel has now reviewed the Titian engagement letter and it is clear that Titan did not waive any future conflicts as to litigation against Plaintiff, thus the conflict of interest in the case before the Court remains.

**LEGAL DISCUSSION**

H&H's conduct in this matter has been surprising. Instead of attempting to resolve a matter which can be resolved under the Model Rules, it chose to abandon its client on the eve of litigation. Intervenor's Brief ("Int. Br.), Exhibit 4. In doing so H&H has done exactly what the current-conflicts rules were designed to prevent, it breached its duty of loyalty. As stated by the Federal Circuit in *Picker,* in its discussion of concurrent conflicts, an attorney owes an "undivided loyalty which an attorney owes to each of his clients." *Picker Int'l, Inc. v. Varian Assocs., Inc.*, 869 F.2d 578, 583 (Fed. Cir. 1989). The ethics rules are designed to protect the L-3 Titan Group, now owned by the Plaintiff, in the matter before the Court, but also all the matters which H&H represents L-3 Titan Group. There is no question that H&H abused its duty of loyalty to L-3 Titan by seizing on a non-existent repudiation to sever its ties.[2] H&H's breach of its duty of loyalty is *per se* prejudicial.

H&H's engagement letter with Titian, upon which H&H relies heavily, includes the following language with regard to future conflicts of interest:

> [W]e [H&H] may represent other clients in commercial transactions…, legislative/policy matters, or administrative proceedings that may involve or affect Titan Corporation and/or its affiliates. We understand that Titan Corporation consents to the firm's current and future representation of any such other clients without the need for any further consents from Titan Corporation, as long as there is no direct conflict of interest.

---

[2] Expressing a difference of opinion about the scope of a contract is not repudiation.

Int. Br., Exhibit 1, p. 3. This advanced waiver applies only to transactional matters, legislative/policy matters, and administrative proceedings, but not litigation. So even if this conflicts waiver was still valid, which as discussed below it is not, it would not apply to the matter before the Court. The advance waiver also states that

> Titan Corporation is our [H&H's] client for specific matters on which it engages us, and we shall not be deemed to represent its affiliates unless Titan Corporation advises us that such entities are directly involved in or affected by our representation of Titan Corporation.

This waiver clearly applies to any of Titan's then affiliates, but it does not necessarily apply to any company, which was not affiliated with Titan at the time of the signing of the waiver. Even assuming this conflicts waiver applied to litigation and could also apply to Plaintiff, who was not a party to the engagement agreement, the Court must look to the American Bar Association's Model Rule of Professional Responsibility ("Model Rule") to determine the validity of the waiver. Comment 22 to Model Rule 1.7 provides guidance with regard to a client giving informed consent to future conflict of interest. Comment 22 states that,

> … If the consent is **general and open-ended**, then the **consent ordinarily will be ineffective**, because it is **not reasonably likely that the client will have understood the material risks involved**. On the other hand, if the client is an **experienced user** of the **legal services** involved and is **reasonably informed regarding** the **risk** that a **conflict may aris**e, such **consent** is **more likely to be effective**, particularly if, e.g., the client is independently represented by other counsel in giving consent and the consent is limited to future conflicts unrelated to the subject of the representation. In any case, advance consent cannot be effective if the circumstances that materialize in the future are such as would make the conflict nonconsentable under paragraph (b). (emphasis added)

The type of general waiver contained in the engagement letter in question can not be considered dispositive of the issue before the Court because at the time it was entered into neither H&H nor Titan could have reasonably foreseen the relationship between Titan and Plaintiff. Further, Plaintiff, to date, has received no guidance from H&H as to the impact, i.e. metes and bounds, of

the conflicts waiver. In fact, the matter before the Court is the first time this issue was raised by H&H to the Plaintiff.

The key issue in any waiver analysis is whether the client had informed consent when it prospectively waives potential conflicts. In fact, ABA Formal Opinion 05-436, which interprets Model Rule 1.7 states that "waiver", as used in Comment 22, is intended to mean the same thing as informed consent. Under Model Rule 1.1(e) informed consent means an agreement

> …by a person to a proposed course of conduct after the lawyer has communicated adequate information and explanation about the material risks of and reasonably available alternatives to the proposed course of conduct.

Since H&H never discussed this general waiver with Plaintiff it can not be considered to have agreed to the blanket waiver after it was explained the risks. Though the comments to Model Rule 1.7, in particular comment 22, do not address the impact of prospective waivers by an acquired company on the acquiring company, general guidance, with regard to change in circumstances after an advanced waiver is given, can be found in comment *d* to the Restatement Third of the Law Governing Lawyers, §122.[3] Restatement §122 is substantially similar to Model Rule 1.7(b). *Compare* Model Rule 1.7(b) *with* Restatement Third of the Law Governing Lawyers, §122 (2000). Comment *d* to the Restatement states that when "a material change occurs in the reasonable expectations that formed the basis of a client's informed consent, the new conditions must be brought to the attention of the client and new informed consent

---

[3] Intervenor states that it found no documents that supports the contention that the actions of a pre-acquired corporation does not bind the acquiring corporation in the area of advance consent to conflicts of interest. Int. Br. at 15. Apparently Intervenor's counsel failed to review Restatement Third of the Law Governing Lawyers, §122, comment *d*, although D.C. Ethics Opinion 309, cited by Intervenor, does discuss Restatement §122, comment *d* and the impact of change in circumstances on prior waivers of conflicts of interest.

obtained…" In the case before the Court it is clear that a material change has occurred, the purchase of Titan by the Plaintiff, and as such H&H was obligated to seek a new informed consent for the waiver to be applicable. It need not have sought this new consent immediately—but certainly should have done so when it took a position adverse to Plaintiff during the Agency Protest.[4]

It was incumbent on H&H discuss this blanket waiver with Plaintiff so that it could make an informed decision as to whether it wanted to continue to engage H&H with the blanket waiver as a condition of engagement. Instead H&H argues that it was not required to seek new informed consent for Plaintiff because the engagement letter stated that H&H represented Titan on specific matters and not its affiliates unless Titan informed H&H otherwise. Int. Br., Exhibit 1, p. 3. This general language does not allow H&H to shirk its responsibility and discuss this matter with Plaintiff. Most surprising of all is H&H's summary termination of its relationship with L-3 Titan. H&H had adequate opportunity to inform Plaintiff that it was considering doing so, or that it felt such a termination was justified. Instead of attempting to work through the matter—as the duty of loyalty would surely require—H&H simply acted by fiat, choosing which current client to represent, dropping the other client like a "hot potato."

H&H is asking this Court to excuse its failure to conduct a proper conflicts of interest search, its "sandbagging" Plaintiff and the Court by failing to bring to the Court's attention the existence of this letter (offering instead a jurisdictional argument H&H has wisely abandoned), and its eleventh hour, June 5, 2006, "repudiation" letter[5] to L-3 Titan, after it

[4] The Intervenor's failure to do so does not convert this to a thrust upon conflict.

[5] It is worth noting again that Plaintiff did not, in its brief, repudiate any agreement with H&H. Rather, it questioned the applicability of a particular clause in the engagement agreement (continued...)

assisted the Agency in responding to the Agency Level Protest while the conflict of interest existed. H&H essentially blames the client for its failures. H& H asks the Court to excuse its breach of its duty of loyalty towards L-3 Titan, its client.

**CONCLUSION**

The Court, as addressed in Plaintiff's Brief, has both the power and the primary responsibility to address ethical issues raised in cases before it. H&H's continued representation of Intervenor raises significant concerns. The Court should exercise its authority and disqualify H&H from representing Intervenor in this matter.

Respectfully submitted,

/s/ Michael A. Hordell
Michael A. Hordell
PEPPER HAMILTON LLP
600 14th Street, N.W., Suite 500
Washington, DC 20005-2004
Telephone: (202) 220-1200
Facsimile: (202) 220-1665

*Attorney for L-3 Communications Corporation*
*Link Simulation & Training Division*

Of Counsel
Charles H. Carpenter
Sean P. Bamford
PEPPER HAMILTON LLP

Dated: June 3, 2006

(continued...)

to a situation that was unforeseen and unforeseeable at the time the engagement was commenced.